Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5089 | **DATE** | 3/12/2002 |
| **CASE TITLE** | SE-KURE CONTROLS, INC. vs. HINNOM PRODUCTIONS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 3/26/02 at 9:00 a.m. Enter Memorandum Opinion And Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 13 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 40 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | MAR 13 2002 date mailed notice | |
| LG courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SE-KURE CONTROLS, INC., )
)
    Plaintiff, )
)
v. ) No. 01 C 5089
)
HINNOM PRODUCTIONS, INC., an Illinois )
Corporation; CHRISTOPHER MARSZALEK, an )
Individual; and SENNCO SOLUTIONS, INC., ) Judge John W. Darrah
an Illinois Corporation, )
)
    Defendants. )
)

MEMORANDUM OPINION AND ORDER

DOCKETED
MAR 1 3 2002

Plaintiff, Se Kure Controls, Inc. ("SeKure"), alleges that Defendants infringe two of its patents, Patent No. 5,245,183 (183 Patent) and Patent No. 5,566,848 (848 Patent). Both patents relate to security devices that attached to products. The parties have submitted briefs, and the Court entertained oral argument concerning the claim construction of disputed claim terms. The Court has reviewed the briefs and oral argument and defines the disputed terms below.

The first step of a patent infringement analysis consists of a determination of the meaning and scope of the patent claims asserted to be infringed. This is commonly referred to as claim construction. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*Markman*).

In construing the claims of a patent, the court reviews the extrinsic evidence of record. This evidence includes the claims of the patent, the specifications, and the prosecution history. *See Bell Atlantic Network Serv., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001) (*Covad*).

Generally, all of the terms in a patent claim are given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (*Rexnord*). Unless compelled to do otherwise, a court should give a claim term the full range of its ordinary meaning as understood by one of ordinary skill in the relevant art. *Rexnord*, 274 F.3d at 1342. Dictionaries and technical treatises, while extrinsic evidence, may also be considered along with the intrinsic evidence when determining the ordinary meaning of claim terms. *Covad*, 262 F.3d at 1267.

Once the plain meaning of a disputed claim term is ascertained, the court must examine the written description and any drawings to confirm that the patentee's use of the disputed term is consistent with the meaning given to such term by the court. *Rexnord*, 274 F.3d at 1342. The written description and any drawings are reviewed to determine if the patentee chose to set forth an explicit definition that is different in scope from that of the ordinary meaning. In addition, the court examines the written description and drawings to determine whether the preferred embodiment falls within the scope of a construed claim because a claim construction that would exclude the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support'. *Rexnord*, 274 F.3d at 1342, quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Furthermore, the written description and drawings are reviewed to determine whether the patentee disclaimed any subject matter or has otherwise limited the scope of the claims. *Rexnord*, 274 F.3d at 1342.

The court also reviews the prosecution history because a statement made during the prosecution of a patent may affect the scope of the invention and the meaning of the claims. *Covad*, 262 F.3d at 1268. Lastly, claim terms should be construed consistently with their appearance in

2

other places in the same claim or other claims of the same patent. *Rexnord*, 274 F.3d at 1342.

The parties first dispute the construction of the term "disc" as found in claims 1 and 15 of the 183 Patent as found in the "disc-shaped element" and "mounting disc". Specifically, the parties dispute the meaning of "disc".

Claim 1 of the 183 Patent includes, in pertinent part, "said attaching means comprising a disc-shaped element ... one of the disc-shaped element surfaces facing in a first direction ... the one disc-shaped element surface being generally perpendicular...." Claim 15 of 183 Patent states, in pertinent part, "said second attachment means comprising a mounting disc...."

The terms, including "disc", are not explicitly defined in the specification. A 183 Patent drawing depicts the "disc-shaped element" as a flat circular plate.

Plaintiff seeks to define disc as "a relatively thin object with opposite facing surface...." Plaintiff arrives at this definition by looking to synonyms of disc, including "sheet", "panel", "pane", or "slab". Plaintiff does not cite any authority where a term was construed based on a synonym of that term. Plaintiff also seeks the Court take judicial notice of a conventional computer disc, which Plaintiff alleges is a thin, plate shape with a square peripheral shape.

Defendant argues that the term "disc" should be given its plain meaning.

"Disc' ["Disk"] is defined as a "thin circular object". Webster's Third International Dictionary 651 (3d ed 1986). A review of the Patent description and drawings do not evince that Plaintiff set forth a definition different in scope than that of its plain meaning. Instead, the Patent drawing supports the plain meaning. Furthermore, contrary to Plaintiff's argument, a conventional computer disc, while encased in a square, is actually circular.

Based on the above, the term "disc" is defined as a "thin circular object".

Next, the parties dispute the construction of "rounded dimple" found in claims 1, 15, 22, and 25 of the 183 Patent.

Claims 1, 15, 22, and 25 of the 183 Patent include, in pertinent part, a "rounded dimple".

The term "rounded dimple" is not explicitly defined in the specification. "Rounded" is defined as "convex, curving, or round in shape". Webster's Third International Dictionary 1979 (3d ed 1986). "Dimple" is generally defined as "a slight natural indentation ... a depression or indentation...." Webster's Third International Dictionary 634 (3d ed 1986). The parties agree that the "dimple" in the 183 Patent is not an indentation as the term is commonly defined; instead, it is a protrusion or a bump. The drawings of the 183 Patent show support of such a definition as does the claim itself – "a protrusion that is a rounded dimple".

The parties disagree on the construction of the term "rounded", which modifies the protrusion or bump. Plaintiff argues that the correct definition for "rounded dimple" is "a protrusion with a rounded surface". Defendant argues that the term should be defined as "a hemisphere-shaped bump".

The 183 Patent recites that the dimple has a curved surface to allow "guided pivoting" of the disc-shaped element relative to the housing and that the dimple has a curved surface to allow "universal pivoting" of the mounting disc. Figure 5 of the 183 Patent illustrates the dimple as half of a sphere.

While Figure 5 supports Defendant's proffered definition, such definition is more restrictive than the ordinary definition of rounded. The Patent does not demonstrate that such a restrictive definition is required. On the other hand, Plaintiff's proffered definition does not include a term or terms defining rounded but simply uses rounded. Therefore, Plaintiff's construction leaves the

4

construction of the term to further interpretation.

The proper construction of the term "rounded dimple" is "a convex or curved shape protrusion" in light of the plain and ordinary definition of the term rounded, the agreed to definition for dimple as to this Patent, and the Patent drawings and description,.

Lastly, the parties dispute the term "conformable part" that is found in claims 1through5, 6, 9, 12, and 18 of the 848 Patent. At oral argument, Plaintiff stated that claims 3, 4, 5, and 12 of the 848 Patent were not going to be pursued. Accordingly, only claims 1, 2, 6, 9, and 18 need be addressed.

Claims 1 and 2 of the 848 Patent state, in pertinent part, "said body having at least a part that is conformable to a surface on the article ... wherein the conformable part of the body is made from material that can be reconfigured into a plurality of different shapes and maintains itself in the plurality of different shapes, wherein the conformable part ... comprises thermal setting rubber".

Claim 6 of the 848 Patent includes, in pertinent part, "the conformable part of the body is made from a material that can be reconfigured into a plurality of different shapes and maintains itself in the plurality of different shapes independently of the article to which the security apparatus is to be connected and without any external force applied to the body".

Claim 9 of the 848 Patent states, in pertinent part, "said body having at least a part comprising thermal setting rubber that is conformable to a surface on the article to which the security apparatus is attached".

Claim 18 of 848 Patent contains similar language: "the conformable part of the body is made from a material that can be reconfigured into a plurality of different shapes and maintains itself in the plurality of different shapes independently of the article to which the security apparatus is to be

5

connected".

The written description of the 848 Patent draws an analogy of these limitations to putty, which retains different shapes so "there is little tendency of the body to peel off". The written description distinguishes the thermal setting rubber of the patented device to conventional plastic flexible material which, "while reconfigurable, tends to resume its undeformed shape".

During the prosecution of the 848 Patent, the "conformable part" was distinguished from the suction cup found in the previously issued Norrad Patent by reason that the conformable part can be placed in different shapes but does not spring back into an undeformed state once a conforming part is released or the conformable part is separated from an article to which it had been applied.

The 848 Patent does not explicitly define "conformable part". "Conformable" is defined as "corresponding in form". Webster's Third International Dictionary 477 (3d ed 1986).

Plaintiff argues that "conformable part" can/should be construed separately for each of the claims in which it is found. However, it proffers only one construction, stating that, "in most of the claims", conformable part should be defined as a material "that can be deformed under the application of a modest force and changed from an initial starting shape and maintained in shapes different than the starting shape with the part separated from an article". Defendant argues that the term should be construed to mean "a material that can be molded into different shapes and retains those shapes on its own".

The plain language of the above claims demonstrates that Plaintiff used the term "conformable part" consistently throughout the Patent and that it should be construed consistently throughout all of the claims of the Patent. *See Rexnord*, 274 F.3d at 1342. All of the claims, except for claim 9, state that the material can be reconfigured into different shapes and that the material

maintains <u>itself</u> in those different shapes. Claims 6 and 18 also state that the material maintains its different shapes <u>independent</u> of the article to which it is attached. The written description of the Patent, in which the above-described limitations draw an analogy to putty, which retains different shapes so "there is little tendency of the body to peel off", and distinguishes the thermal setting rubber of the patented device to conventional plastic flexible material which, "while reconfigurable, tends to resume its undeformed shape", further supports a construction requiring the material to maintain its configured state independent of the article to which it had been attached. Furthermore, the prosecution history supports such a construction.

Based on the above, the conformable part of the 848 Patent is construed to mean "a material that can be reconfigured into a plurality of different shapes and maintains itself in the plurality of different shapes independent of the article to which it is attached".

Dated: March 12, 2002

JOHN W. DARRAH
United States District Judge